## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

WON SOK LEE                           Docket No.: 06-80197-CR-RYSKAMP

      Petitioner,

vs.

UNITED STATES OF AMERICA

      Respondent.

_____/

## PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO CORRECT VACATE, AND/OR SET-ASIDE SENTENCE AND CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

Comes now the Petitioner, WON SOK LEE (hereinafter "Mr. LEE"), by and through the undersigned counsel, files the instant Reply to the Government's Response to Petitioner's Motion to Correct Sentence and/or Set Aside Conviction and/or Sentence pursuant to Title 28 U.S.C. Section § 2255 and in support thereof proffers the following:

## I. <u>REPLY</u>:

**COUNSEL'S OMISSIONS AND/OR COUNSEL'S FAILURE TO CONDUCT A POLYGRAPH EXAMINATION OF MR. LEE AND HIS PARENTS WAS NOT THE RESULT OF COUNSEL'S *<u>ABDICATION</u>* OF THE DUTY AND RESPONSIBILITY TO ADVOCATE MR. LEE'S CASE DURING THE SENTENCING PHASE, RATHER,  COUNSEL SIMPLY FAILED TO PRESENT ADEQUATE EVIDENCE TO REBUT THE GOVERNMENT'S ALLEGATION THAT PETITIONER REFUSED TO RETURN $3 MILLION DOLLARS THAT WERE THE PRODUCT OF THE FRAUD IN THE CASE *SUB JUDICE* NOTWITHSTANDING MR. LEE'S ALLEGED ABILITY TO DO SO**

The government's response maintains the issue of former counsel's failure to administer the polygraph exam requested by Mr. LEE  would not have been relevant, because it would not have lowered his eventual sentence.   However, by former counsel's own admissions at sentencing: "The government believes, if you boil everything down, that Won Lee has the ability to make restitution.  They are seeking 300 months, the 25 years, set forth in the plea agreement, based upon the fact they [the government] believe he has the funds, and that he is continuing not to disclose these funds.  *See* 12-11-2009 TR at P. 5.

Based upon former counsel's own statements, the issue of Mr. LEE's truthfulness regarding the $3 million dollars that were unaccounted for  was "the issue" of contention, and surely the government would have given Mr. LEE the same bargain as his co-accused and leader of the instant fraud had they been presented with evidence supporting Mr. LEE's position that he was being truthful.  Consequently, it cannot be said Mr. LEE was not prejudiced by former counsel's failure to present evidence of a polygraph exam to this Honorable Court and the government on this point, as it was the **<u>only</u>** way to prove Mr. LEE was in fact being truthful.

It is important to note that the government and defense counsel, routinely engage in the polygraph testing of Defendant's where there is a close call on an issue such as the one present before this Honorable Court.   For example, in the matter of <u>United States of America v. Juan</u>

Diego Espinosa, Case No. 02-20448-CR-JORDAN, Assistant United States Attorney Eric Morales polygraphed Defendant where it was a close call, and the word of the confidential informant against that of the Defendant and the government was deciding whether to object to the recommendation that the Defendant receive acceptance of responsibility.  The Juan Diego Espinosa matter was resolved in favor of the Defendant, whom the government believed was lying, however, the polygraph exam exonerated Mr. Juan Diego Espinosa and the government agreed to recommend acceptance of responsibility, as well as the third point, and safety valve. *See*  United States of America v. Juan Diego Espinosa, Case No. 02-20448-CR-JORDAN.

It is undisputed that prior to sentencing the government made it abundantly clear to counsel for Mr. LEE that it was the government's position that Mr. LEE was refusing to either return or report the whereabouts of the monies which were the product of the fraud for which Mr. LEE was sentenced on December 11th, 2009–to wit, $3 million dollars.  More importantly, during the course of sentencing counsel for Mr. LEE acknowledged that since the time of Mr. LEE's first appearance the government advised they would take a **"...[v]ery hard position"** unless Mr. LEE returned the $3 million dollars.  *See* 12-11-2009 TR at P. 6.  Additionally, counsel for Mr. LEE set forth a memorandum from Mr. LEE wherein the latter provides a detailed account of what occurred with the $3 million dollars in question and how he came to entrust Mr. Oh with same. *See* 12-11-2009 TR at P. 7.  Moreover, counsel for Mr. LEE acknowledged the "...[o]nly disagreement Mr. Lee had with the government is that Won Lee does not have access to those funds." *See* 12-11-2009 TR at P. 7.

Clearly, the need for former counsel to have conducted a polygraph exam of her own client–Mr. LEE–cannot be understated in the case *sub judice*.  If ever there were a case that called for the administration of a polygraph exam, it would be Mr. LEE's case, as it would be a single issue exam–the issue being: Does Mr. LEE have the $3 million dollars in his custody and control and if so, is he refusing to return it to the United States Government?

The government's reply that a polygraph exam would not have changed the ultimate sentence could not be farther from the truth when considering the government's own position that Mr. LEE did not deserve a break for acceptance of responsibility because of the monies that had not been returned.  *See* 12-11-2009 TR at P. 16-17.  The government even went as far as stating: "...[a]nd to suggest that this defendant tried to get the money back, it defies common sense in my experience." *See* 12-11-2009 TR at P. 17.   At sentencing the government additionally unfairly and incorrectly maintained Mr. LEE was going to have a few million dollars upon his release from incarceration. .  *See* 12-11-2009 TR at P. 18.

Former counsel did in fact ask the Court not to punish Mr. LEE for his inability to return the funds at issue, and likewise requested that Mr. LEE receive the benefit of acceptance of responsibility as his co-accused and lead defendant, thereby yielding a sentence of 220 months incarceration.  *See* 12-11-2009 TR.  Former counsel also requested this Honorable Court to alternatively sentence Mr. LEE to 180 months, which would be a sentence below that of the ringleader, Mr. Jung Kim, the latter who violated a Court Order and dissipated $300,000.00 dollars in assets.   Notwithstanding former counsel's arguments, former counsel presented nothing to the Court which actually tested Mr. LEE's truthfulness on the issue of the $3 million dollars, although counsel could have easily had Mr. LEE polygraph tested.

That is, long before sentencing, and once the government let their position be known to former counsel regarding  Mr. Lee's purported lack of truthfulness concerning the whereabouts of the embezzled funds at issue, Mr. LEE immediately requested counsel to conduct a polygraph examination of himself and his parents in order to rebut the government's position on the issue of  the  missing  $3 million  dollars. In fact, Mr. LEE's father forwarded additional funds–approximately $5,000.00 dollars–to former counsel as consideration for the costs of Mr. LEE's polygraph exam, as well as those of his mother and father.

Notwithstanding Mr. LEE's request to have a polygraph exam conducted and presented at the time of sentencing, and notwithstanding the fact counsel recognized the importance of having this issue resolved early on, counsel for Mr. LEE failed to follow her client's request to undergo a polygraph exam, and consequently failed to provide the evidence this Honorable Court needed to rebut the government's allegation that Mr. LEE had the ability to make restitution, yet simply failed to do so.

Counsel for Mr. LEE should have recognized the importance of proving Mr. LEE and his parents were being truthful with the government regarding the whereabouts of the monies at issue.  Counsel for Mr. LEE should have likewise realized Mr. LEE's truthfulness on this point was crucial to Mr. LEE's defense at sentencing. And, at sentencing counsel even acknowledged the fact that the parties were at "an impasse" regarding the missing funds, and counsel likewise recognized the importance of resolving the matter and attempted to explain what had transpired between Mr. LEE and Mr. Oh.  *See* 12-11-2009 TR at P. 4-11.   Of even greater significance is the fact that the government made it abundantly clear before sentencing that the government would be requesting 300 months incarceration based upon the government's belief  Mr. LEE had the ability to make restitution, but simply refused to do so, and similarly refused to disclose the whereabouts of the missing funds.  *See* 12-11-2009 TR at P. 5.

At sentencing counsel for Mr. LEE indicated she communicated to the government and offered to have Mr. LEE take an FBI administered polygraph, however, the government did not respond.  *See* 12-11-2009 TR at P. 10.  It is not the responsibility of the government to seek out evidence that is favorable to the accused, but rather that is the province of defense counsel.

Of even greater significance is the fact that counsel for Mr. LEE provided documentation to the government which demonstrated the funds at issue–or $2.2 million dollars–were transferred into the accounts of Mr. Oh and his business partner, and similarly provided an affidavit from Mr. Oh attesting to the fact that he did not have the ability to return the funds because of the downturn in his business, however, he did acknowledge receiving said funds from Mr. LEE.  *See* 12-11-2009 TR at P. 8-9.   Nevertheless, the missing piece of evidence was the polygraph exam of Mr. LEE demonstrating he had not received the monies he had given Mr. Oh back from Mr. Oh.

At sentencing Mr. LEE argued he should receive a sentence that reflected he was  at best, equally culpable but not more culpable than Mr. LEE's co-accused, Jung Kim, who was the lead defendant in the case at bar and was responsible for setting up "...[t]he hedge funds and the related corporate entities," was "...[r]esponsible for recruiting investors and doing most of the trading of the investors' funds," and "...[p]rovided false financial data to investors and accountants hired by the investors about the profitability of the hedge funds." *See* Won Lee PSI Report at ¶23.   Hence at sentencing Mr. LEE maintained a sentence of 180 months incarceration was sufficient to meet the purposes of sentencing.    Alternatively, counsel argued Mr. LEE should receive a sentence of 220 months incarceration, which would account for Mr. LEE's acceptance of responsibility[1].

_____

[1]That is, notwithstanding his leadership role, this Honorable Court sentenced the leader of the instant conspiracy–John Kim–to 220 months based upon his guilty plea to one (1) count of wire fraud, in violation of Title 18, United States Code, Section §1343.  Even worse, John Kim recruited his brother and co-accused, Yung Kim.  And, John Kim was actually held in contempt of court, and thereafter jailed for violating a freeze order in the related civil case, the latter which clearly demonstrated a complete and total disregard for the Orders of a Court.  John Kim's statutory maximum was 240 months incarceration, which was less than his advisory guidelines range of 292-365 months incarceration, thereby resulting in an advisory sentence of 240 months incarceration.   Furthermore, this Honorable Court imposed a sentence of 220 months incarceration on co-accused and leader John Kim, as this Honorable Court varied below the advisory guideline range in order to account for the fact that a statutory maximum sentence would, in effect, give John Kim no credit for his guilty plea and acceptance of responsibility. *See* T.R. 7-17-2008 at D.E. #183.

Although the facts set forth *supra* make it abundantly clear counsel for Mr. LEE should have conducted the polygraph exam as paid for and as requested by Mr. LEE, she nevertheless failed to do so. Consequently, on the day of sentencing counsel for Mr. LEE could not rebut the government's contention that Mr. LEE simply refused to return the stolen monies, as counsel could not provide proof of Mr. LEE's truthfulness.

Additionally, during the course of sentencing the government maintained Mr. LEE's mother and father assisted Mr. LEE to conceal these funds and similarly maintained: "Where are the Defendant's parents to corroborate this story? They are not even here today. Even if they could offer, it's double hearsay.  That would be better than their absence. The story, quite frankly, is–it is absolutely incredulous."  *See* 12-11-2009 TR at P. 16.   Unfortunately, because former counsel for Mr. LEE similarly failed to conduct the stated polygraph exams for Mr. LEE's parents, former counsel could not rebut the government's unfounded allegation against Mr. LEE's parents at sentencing.  More importantly, as the attached polygraph exams demonstrate, Mr. LEE's parents are not assisting Mr. LEE to conceal any assets, and Mr. LEE's parents similarly have not received any monies back from Mr. Oh, notwithstanding their endless efforts to obtain the return of said monies so they can be given back to the United States Government.  ***See Exhibit "1".***

Based upon the foregoing facts, there can be no question Mr. LEE was prejudiced by former counsel's ineffective legal assistance.  And, the evidence that should have been collected by former counsel and presented to this Honorable Court in order to corroborate Mr. LEE's account of the facts which transpired with the missing $3 million dollars. And, as the evidence which has now been collected demonstrates, Mr. LEE's mother and father are not lying and truly have made efforts to get the money Mr. LEE gave Mr. Oh back, so as to return same to the United States Government.  In fact, as **Exhibit "2"** attached hereto demonstrates, Mr. LEE's parents

have gone to great lengths to obtain an assignment of a lien on one of Mr. Oh's buildings in Korea, in yet another attempt to obtain the monies squandered by Mr. Oh against the directions of Mr. LEE.  *See* **Exhibit "3".**

The record demonstrates that had this Honorable Court been given all of the evidence now before it, and which unequivocally demonstrates Mr. LEE's parents are being candid with this tribunal, this Honorable Court would have, at a minimum, granted Mr. LEE a reduction based upon his acceptance of responsibility.

## II. VOLUNTARINESS OF GUILTY PLEA

Notwithstanding the fact the government maintains Mr. LEE graduated law school, and therefore this somehow makes him more knowledgeable regarding the rights he gave up when he changed his plea to guilty, contrary to the government's assertions, Mr. LEE's primary area of legal practice was in the civil arena, which is nothing like criminal practice.

The bottom line is that former counsel did not adequately apprise Mr. LEE of the appellate waiver contained in the plea agreement with sufficient detail for him to fully understand the ramifications of executing same.  Hence when Mr. LEE executed said plea agreement, it was not a knowing and intelligent decision and he did not understand the full consequences of executing said plea agreement.   Along that same vein, it is elementary that in order to satisfy the requirements of due process, a guilty plea must in fact be knowing, intelligent, and voluntary. U.S.C.A. Const.Amend 14.  *See also* <u>Untied States v. Ward</u>, 518 F,3d 75 (1st Cir. 2008). The fact of voluntariness of a guilty plea cannot be inferred by reviewing court from a silent or otherwise inadequate record; instead, due process requires that there be an affirmative showing in the record to support that determination.  U.S.C.A. Const.Amend 14.  *See also* <u>Untied States v. Ward</u>, 518 F,3d 75 1sr Cir. 2008).

A waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been produced. <u>Benigno v. United States</u>, 285

F.Supp.2d 286 (E.D.N.Y. 2003).   Where a petitioner claims a violation of Rule 11 or the ineffectiveness of trial counsel, she is not barred under the terms of the plea agreement from bringing a petition to vacate the conviction based on the legal shortcomings of the process in which the waiver was obtained.  Id. The purpose of Rule 11 is to insure that an accused is apprised of the significant effects of his plea so that his decision to plead guilty and waive his right to trial is an informed one.  Id. If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and is therefore void. Id.

In the case *sub judice* Mr. LEE did not know all of the facts and details regarding the appellate waiver, nor did he understand it's function, hence Mr. LEE did not make a knowing and intelligent waiver of his right to go to trial when he entered his guilty plea.  And, it strains notions of credulity that Mr. LEE would waive his appellate rights in light of the harsh sentence of 300 months. Accordingly, it is respectfully requested that this Honorable Court vacate the instant conviction.

## III. <u>STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE:</u>

Mr. LEE did not raise the aforementioned claims on direct appeal because Mr. LEE executed an appellate waiver and the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal. "Cause" is therefore established for his failure to raise the claim prior to this motion. <u>Ciak v. United States</u>,  59 F.3d 296, 303-304 (2nd Cir. 1995); <u>Bond v. United States</u>, 1 F.3d 631 (7th Cir. 1994); <u>Stoia v. United States</u>, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when claim is based entirely on trial record); <u>English v. United States</u>, 42 F.3d 473, 481 (9th Cir. 1994)(holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct

appeal or (2) the failure to raise the issues was a deliberate bypass of direct review). Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel, cause exists for the failure of Mr. LEE to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his/her claim.

Cause exists for the failure of Mr. LEE to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. United States v. Hardamon, 188 F.3d 843 (7th Cir. 1999); United States v. Galloway, 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); United States v. Tunstall, 17 F.3d 245, 246 [4] (8th Cir. 1994).

Mr. LEE has properly pleaded "prejudice" by pleading the "fundamental defect" in his/her sentence, as set forth herein. Ward v.  United States, 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Mr. LEE, within the meaning of United States v. Frady, 456 U.S. 152, (1982), as construed in case law such as United States v. De La Fuente, 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Mr. LEE sentence is in violation of the Constitution and laws of the United States. Id.  See also Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. LEE of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## IV. <u>JUDGMENT REQUESTED</u>

Pursuant to Rule 5 of the Rules Governing Section § 2255 Proceedings, Mr. LEE asks this Honorable Court to **ORDER** an evidentiary hearing where he/she can prove the allegations herein by: (A) his own testimony; (B) the testimony of Attorney Susan Van Dusen; © additional evidence; and (D) legal argument to be presented at the hearing.

Upon proof of Mr. LEE's allegations herein, Mr. LEE asks this Honorable Court to: 1) **ORDER** that Mr. LEE's conviction be **VACATED** and that he be allowed to re-submit his plea of guilt in a knowingly and intelligent manner wherein he is appraised of all the required facts necessary for such a plea or; 2) that this Honorable Court **GRANT** this Petition and re-sentence Mr. LEE without the various enhancements and; 3) that this Court **GRANT** an evidentiary hearing where the facts may be properly developed on the record and the Court will therefore have an opportunity to examine the evidence in the form of polygraphs that were conducted on Mr. LEE's mother and father on the issue of whether they have assisted Mr. LEE to divert or conceal victim monies and whether they are in the custody or control of said funds[2].

---

[2] As discussed *infra* and *supra*, Mr. LEE's mother and father underwent a polygraph examination which indicated they were being truthful on the issue of the missing monies. That is, Mr. LEE's parents were asked if they had received the monies back from Mr. O and they indicated they had not and neither had Mr. LEE. The results of the polygraph indicate that both of Mr. LEE's parents were being truthful. **(See Exhibit "1").**

## V. MOTION FOR DISCOVERY RENEWED:

Pursuant to Rule 6[3] of the Rules Governing Section 2255 Proceedings, Mr. LEE asks leave of this Court to invoke the processes of discovery. More specifically, he asks this Honorable Court to **ORDER** that Mr. LEE be allowed to likewise undergo a polygraph examination and to likewise ORDER the government to provide any and all evidence they have received from the Korean government and which indicates Mr. O and not Mr. LEE are in the custody and control of the monies at issue[4].   The evidence developed through the foregoing exam and discovery will materially support the allegations of Mr. LEE, as to the "performance" of counsel, detailed and set forth herein.[5]

More specifically, Mr. LEE requests this Court to allow counsel to examine Mr. LEE and to likewise obtain additional evidence in the custody and control of the government regarding testimony provided by Mr.Oh to the Korean government regarding the whereabouts of the missing monies the Government maintain was being concealed by Mr. LEE.   Additionally, Mr. LEE  proffers to this Honorable Court that the additional evidence and examination of Mr. LEE will substantiate the allegations set forth in his Section § 2255 Petition.

---

[3]
 It should be noted that Rule 6(a) of the Rules Governing Section 2255 Proceedings provides for discovery under either Federal Rules of Civil Procedure 26-37 or under Federal Rule of Criminal Procedure 16. *See* J. Liebman and R. Hertz, Federal Habeas Corpus Practice and Procedure, § 41.6 [2-3] (3 Ed. 1998). In this respect, the Rules Governing Section 2255 Proceedings are distinct from the Rules Governing Section 2254 Proceedings because they allow additional discovery devices. *Id.*

[4]Based upon information and belief, the United States government was provided with information and testimony proffered by Mr. .O to the Korean government and which supports Mr. LEE's position that he is not concealing any stolen funds that were diverted during the securities fraud.

[5]
 The Supreme Court's most recent review of "discovery" in habeas corpus proceedings was in <u>Bracy v. Gramley</u>, 520 U.S. 899, 117 S. Ct, 1793, 138 L.Ed.2d 97 (1997). In <u>Bracy v. Gramley</u>, the Supreme Court vacated a District Court and Court of Appeals denial of discovery in habeas corpus, 28 U.S.C. § 2254. The Supreme Court pointed out that Rule 6 of the Rules Governing 2254 Cases, prescribing discovery procedures in federal habeas corpus cases, is meant to be consistent with <u>Harris v. Nelson</u>, 394 U.S. 286, 22 L.Ed.2d 281, 89 S.Ct. 1082 (1969), in which it was stated that where specific allegations before a federal court show reason to believe that a petitioner for federal habeas corpus relief may, if the facts are fully developed, be able to demonstrate entitlement to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry.  *Id.* <u>Bracy v. Gramley</u>, 520 U.S. at 909.

## VI.  AN EVIDENTIARY HEARING IS NECESSARY AND WOULD <u>BE USEFUL TO THE COURT</u>

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show  that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Mr. LEE has pleaded, presented evidence, and argued the applicable law to demonstrate that his/her conviction and/or sentence is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Mr. LEE has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective representation by counsel in the sentencing and appellate phases.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well settled law. <u>United States v. Blaylock</u>, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); <u>Virgin Islands v. Weatherwax</u>, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where

facts viewed in light most favorable to petitioner would entitle him to relief*); Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir 1994) (same); Nichols v. United States, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); United States v. Witherspoon, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Mr. LEE respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where he/she can prove his/her case.

## CONCLUSION

**WHEREFORE MOVANT** Mr. LEE respectfully asks this Honorable Court to: (A) **ORDER** an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Mr. LEE's conviction and/or sentence be **VACATED**.

Done this 11th, day of May, 2011

Respectfully Submitted,

By: *S/Maria Elena Perez, Esq.*
MARIA ELENA PÉREZ
Florida Bar No. 0487910
MARIA ELENA PÉREZ, P.A.
145 Madeira, Suite 310
Coral Gables, Florida 33134
Tel.: (305) 461-3100
Fax: (305) 461-3444

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply to the Government's Response to Mr. LEE's  Section §2255 Petition was filed and served via electronic mail on this 11th  day of May, 2011, and was likewise served via United States Mail upon the Petitioner, Mr. Won Lee, and  the Office of the United States Attorney, West Palm Beach, Florida.

Respectfully Submitted,

By: *S/Maria Elena Perez, Esq.*
MARIA ELENA PÉREZ
Florida Bar No. 0487910
MARIA ELENA PÉREZ, P.A.
145 Madeira, Suite 310
Coral Gables, Florida 33134
Tel.: (305) 461-3100
Fax: (305) 461-3444